UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:11-CV-00189-JHM

STUART COLE and                                                                               PLAINTIFF
LOREN PATTERSON

V.

WARREN COUNTY, KENTUCKY, et. al.                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants South Central Bank of Bowling Green, Inc., Ellen Bale, and Tommy Ross' motion to dismiss [DN 6], Defendants Warren County, Kentucky, Mike Buchanon, Jackie T. Strode, Jeff Robbins, Pat Watt, Misse Cooper-Edmonds, and Gayle Eston's motion for summary judgment [DN 7], and Plaintiffs Stuart Cole and Loren Patterson's motion for leave to file an amended class action complaint [DN 21]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **GRANTS** the Defendants' motion to dismiss and motion for summary judgment.

**I. BACKGROUND**

The Plaintiffs, Stuart Cole and Loren Patterson, bring this class action complaint on behalf of persons lodged in the Warren County Regional Jail ("Jail"), challenging various policies concerning the seizure of property upon admission into the jail and the assessment of various fees of incarceration. Plaintiff Cole was arrested for the first time on October 25, 2003 and booked into the Jail. At the time of his arrest, Cole had a check made payable to him in the amount of $33.00. The check was taken by the Jail and stamped "For Deposit Only, Warren County Jail, Inmate Account" and deposited into the South Central Bank Inmate Account and $33.00 was credited to Cole's Inmate Canteen Account. Cole was assessed a $20 processing fee and a $20 daily housing

fee. These fees were deducted from Cole's inmate account. After Cole posted bond and was released, a $5 bond fee was also charged to his inmate account. At the time of his release, Cole owed a balance of $12 to the Jail which remained unpaid.

On March 12, 2009, Cole was again arrested and booked into the Jail. This time, Cole had two checks written to him, one in the amount of $200 and the other in the amount of $59.55. He also had $4 in cash on him. The checks were taken by the Jail and stamped with "For Deposit Only, Warren County Jail, Inmate Account." The cash was also deposited. Cole's account was charged with the negative $12 balance from his arrest in 2003, as well as a $75 fee, which Defendants state is a $50 processing fee and a $25 daily housing fee. When Cole was released on Bond he signed a Prisoner Property Receipt that stated:

> I hereby certify that I have received all items listed on this receipt as well as information regarding the funds within my inmate account and the appropriate procedures for recouping the same.

(Warren County Regional Jail, Prisoner Property Receipt [DN 7-7].) Cole also signed a Rights Form when he was admitted to the Jail which advised him:

> If due a refund and you fail to come by the jail, or fail to return the bottom of the letter given to you at the time of your release, to the jail within ninety (90) days, you will have forfeited your refund and it will become the property of the jail.

(Warren County Jail Inmate Rights & Rules and Services Offered to Inmates [DN 7-8].) At the time of his release, Cole was due a refund of $172.70. Cole did not claim his refund within the time period and the Jail has retained the funds.

Plaintiff Loren Patterson was arrested on September 5, 2011, and booked into the Jail possessing a check for $150 that was made payable to Patterson. Consistent with policy, his check was taken from him and stamped "For Deposit Only, Warren County Jail, Inmate Account" and

deposited in the South Central Inmate Account. The Jail deducted $100 as a booking fee, which the County Defendants claim is a $70 administrative processing fee and a $30 daily housing fee. Patterson was released on bond and charged a $5 bond fee. Patterson's check was returned to the Jail due to a "Stop Payment" order and a $5 handling fee was charged to his inmate account, leaving a negative balance of $110.

The Plaintiffs bring a § 1983 claim alleging violations of the Fourth and Fourteenth amendments, as well as various state law claims. Plaintiffs chiefly complain that their checks were deposited in the South Central Bank Inmate Account without their knowledge, consent or endorsement and thus, they were deprived of their property without due process of law. Plaintiffs argue that the charges were made and their property taken before they had an opportunity to a hearing before a sentencing court. Plaintiffs maintain that according to KRS 441.265(1), only a sentencing court may require a prisoner to reimburse the county for costs associated with confinement.

South Central Bank of Bowling Green, Inc., Ellen Bale, and Tommy Ross (collectively "SCB Defendants") have moved the court to dismiss the action against them. Warren County, Mike Buchanon, Jackie T. Strode, Jeff Robbins, Pat Watt, Misse Cooper-Edmonds, and Gayle Eston (collectively "County Defendants") have moved for summary judgment. All Defendants argue that the county governing body was authorized by KRS 441.045 to implement rules for operating the jail and KRS 441.265 authorizes the jailer to impose prisoner fees which "may be automatically deducted from the prisoner's property or canteen account." KRS § 441.265(1);(6).

## II. STANDARD OF REVIEW

The SCB Defendants have filed a motion to dismiss stating that all of Plaintiffs' claims fail

as a matter of law. While they have not specifically referenced Fed. R. Civ. P. 12(b)(6), this Court will analyze the motion under that standard. In addition, the SCB Defendants and the County Defendants have adopted each other's applicable arguments under their motion to dismiss and the motion for summary judgment. As the Court has relied on purely legal arguments, it will analyze both the County Defendants and SCB Defendants' arguments under a motion to dismiss standard.

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court

4

reviews documents that are not attached to the complaint. Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Id. (quotation omitted). "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

### III. DISCUSSION

**A. 42 U.S.C. § 1983 Claims**

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." Flint ex rel. Flint v. Ky. Dep't of Corr., 270 F.3d 340, 351 (6th Cir. 2001). Two allegations are required to state a claim under § 1983. Gomez v. Toledo, 446 U.S. 635, 640 (1980). First, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," West v. Atkins, 487 U.S. 42, 48 (1988), and second, he "must show that the alleged deprivation was committed by a person acting under color of state law." Id. "Absent either element, a section 1983 claim will not lie." Christy v. Randlett, 932 F.2d 502, 504 (6th Cir. 1991).

In their Complaint, Plaintiffs have alleged that (1) "[t]he policy, custom and/or practice at the Jail of endorsing, cashing and retaining all proceeds from checks in the possession of persons admitted to the Jail other than sentenced prisoners without the payees' knowledge, approval, endorsement or consent;" (2) "[t]he policy custom and/or practice of accepting and honoring such

5

checks by South Central Bank of Bowling Green, Inc.;" and (3) "[t]he policy, custom and/or practice at the Jail of retaining cash and proceeds from checks of persons admitted to the Jail other than sentenced prisoners without their consent, and/or in violation of and/or in excess of sums permitted under KRS § 441.265, and/or without providing an accounting of same" are in violation of the Fourth and Fourteenth Amendment of the United States Constitution.

**1. Fourth Amendment**

Both the SCB Defendants and the County Defendants argue that there were no violations of Plaintiffs' Fourth Amendment rights. The SCB Defendants argue that an exception to the Fourth Amendment's prohibition against warrantless searches and seizures includes searches incident to custodial arrests and searches when booked at a jail. The County Defendants state that the Jail is required by 501 KAR § 3:120(3)(1)-(3) "to conduct a search of each prisoner and his possession to search for contraband in such a manner which jail personnel reasonably determines is necessary to protect the safety of fellow prisoners, jail personnel, and institutional security." (County Defs.' Mot. Summ. J., 9 [DN 7].) Additionally, the County Defendants state that the Jail had a "legitimate interest in searching for and seizing money which inmates may carry inside the jail, in order to maintain a safe and orderly facility." (Id.)

Plaintiffs acknowledge the exception and state that they do not complain of being searched at booking or at having property removed from their possession and held until their release. Nor do they challenge the constitutionality of the Jail's reimbursement for statutorily-authorized fees in the manner proscribed by KRS § 441.265. Instead, Plaintiff complains that the "[s]eizure of these monies offends the reasonableness requirement of the Fourth Amendment to the extent such seizure violates the provisions of KRS § 441.265 - the statute's prescription for satisfying procedural due

6

process, and its limitation, effected through the Fiscal Court ordinance, of how much can be seized, and for what." (Pls.' Memo in Opposition to Mot. to Dismiss, 13 [DN 10].) Stated another way, the seizure of the monies is not unreasonable under the Fourth Amendment provided the provisions of KRS § 441.265 are followed. Thus, this issue is dependent upon the analysis below.

**2. Fourteenth Amendment**

The Fourteenth Amendment guarantees that no State will deprive a person of life, liberty, or property without due process of law. U.S. Const. amend XIV, § 1. The guarantee of procedural due process "assures the deprivation of life, liberty, or property will not be effectuated without 'notice and opportunity for hearing appropriate to the nature of the case.'" Barachkov v. 41B Dist. Court, 311 F.App'x 863, 871 (6th Cir. 2009) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)). A procedural due process claim raises two questions: (1) "whether there exists a liberty or property interest which has been interfered with by the State" and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dept. Of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

Both the County Defendants and the SCB Defendants agree that the Plaintiffs had a property interest in their money, answering the first question affirmatively. As to the second question, the Plaintiffs insist they are not arguing they are entitled to a pre-deprivation hearing before the Jail seizes cash and checks in their possession to reimburse costs authorized pursuant to KRS § 441.265. Instead, Plaintiffs contend they are entitled to a hearing in front of the sentencing court before the Jail can collect any funds for reimbursement of prisoner confinement expenses. The statute states:

> [A] prisoner in a county jail shall be required by the *sentencing court* to reimburse the county for expenses incurred by reason of the prisoner's confinement as set out in this section, except for good cause shown.

7

KRS § 441.265(1) (emphasis added)

The same argument was made to Judge Bertelsman in <u>Sickles v. Campbell Co., Ky.</u>, 439 F. Supp. 2d 751 (E.D. Kentucky, July 13, 2006) and it was rejected.  Judge Bertelsman's decision was upheld by the Sixth Circuit in <u>Sickles v. Campbell Co., Ky.</u>, 501 F.3d 726 (6th Cir. 2007).  Plaintiffs argue that Judge Bertelsman interpreted the statute incorrectly and that the Sixth Circuit's holding is limited.

Plaintiffs fault Judge Bertelsman for not looking to the legislative history after finding that the statute was ambiguous.  Although the word "ambiguous" was used in Judge Bertelsman's opinion, it is clear that he did not find the statute ambiguous after it was considered as a whole.  Therefore, it would have been improper for him to have referred to the legislative history.  The Court agrees with Judge Bertelsman and finds no ambiguity in the statute.

Judge Bertelsman cited the automatic deduction provisions of KRS § 411.265(6), and the definition of "prisoner" found in KRS § 441.005(3)(c), to conclude that the correct reading of the statute is that fees may be imposed and periodically collected as soon as the prisoner is booked into the jail. The reference to the "sentencing court" in subparagraph (1) was found by Judge Bertelsman to allow the court to impose a judgment for any deficiency at sentencing which was not defrayed by the automatic deduction.[1]

On appeal, the Sixth Circuit held that a jail may withhold a portion of an inmate's account in order to cover costs without providing the inmate with a hearing before it withholds the money.

---

[1]Additionally, the provisions of subparagraph (1) would seem to provide a prisoner a mechanism to ask the sentencing court to excuse the payment of expenses for good cause, particularly if the charges are acquitted or dismissed.

The Sixth Circuit determined that there was a property interest at stake, and then addressed what process is due by balancing "[1] the private interest that will be affected by the official action; . . . [2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and . . . [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 730 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). After analyzing the four factors, the Sixth Circuit held that "[i]n view of the modest private interests at stake, the small risk of error, the limited benefits of additional safeguards and the unchallenged government interests in the policy," there was no need for a pre-deprivation hearing before Campbell County and Kenton County withheld funds from inmates' accounts. Id. at 730-31.

The Plaintiffs attempt to distinguish their argument here from that which the Sixth Circuit has already rejected in Sickles. However, the Court sees no difference. Here, the Plaintiffs claim that KRS § 411.265(1) requires that any withholding be delayed until after the sentencing court conducts a hearing. That precise claim was made, acknowledged, discussed, and rejected by the Sixth Circuit when it quoted the language of KRS § 411.265(1) and stated that "to say that a sentencing court must do one thing (requiring reimbursement even after the inmate's release) is not to say that another government entity (the county jail) may not do another (collecting room-and-board fees from inmates while they remain in jail)." Id. at 732. Therefore, the Court concludes that Sickles is controlling on the issue of whether KRS § 411.265(1) requires withholdings to be delayed until after a hearing before the sentencing court.

However, there are claims made in this case which are different from those made in Sickles. Plaintiffs challenge the practice of seizing personal checks made payable to a prisoner, depositing

9

them into the Jail account without the prisoner's endorsement, knowledge or consent; not providing the prisoner with a billing statement upon release as required by KRS § 411.265(7); and the charging of fees not authorized by KRS § 411.265(2)(a). The Court will address each of these in turn.

First, as to the practice of seizing personal checks made payable to a prisoner and depositing them into the Jail account without the prisoner's endorsement, knowledge, or consent, the Court does not find a Due Process violation. While it has already been noted that the Plaintiffs have a property interest in the checks, this property interest is no different from the interest they have in the cash that is in their possession upon arrest. The funds (made up of both cash and checks) are deposited into the inmates' account for safe keeping, which, under Sickles is not a due process violation. SCB converts the checks to cash in the inmates' account. However, with the exception of the Jail withdrawing fees that it is constitutionally allowed to withdraw, Plaintiffs have access to these funds while in jail and once they are released from Jail. Plaintiffs were not deprived of their funds. See Sickles, 501 F.3d 726; Browder v. Ankrom, 2005 WL 1026045 (W.D.Ky. April 25, 2005) (holding that inmates are not deprived of their property because the money is deducted in exchange for services rendered or goods provided.). See also Lawson v. Clarke, 2007 WL 2778259 (W.D. Wash., Sept. 21, 2007) ("While plaintiff alleges that his private funds have been 'converted,' he offers no evidence that he was ever denied access to the funds on deposit in his personal account, or that any such funds were ever withheld from him, except to the extent that funds received for deposit in plaintiff's personal account were subject to mandatory deductions under" state law.) While the Plaintiffs claim the Jail's endorsement and SCB's acceptance of the checks violates Kentucky state law, it does not violate their Due Process since Plaintiffs were not deprived of their property. The Fourteenth Amendment "is not violated every time a county violates a state law."

Sickles, 501 F.3d at 731.

Second, the Plaintiffs claim they were not provided with a billing statement upon release as required by KRS § 441.265(7) and, therefore, their Fourteenth Amendment Due Process was violated. By statute, upon release "the prisoner shall be presented with a billing statement produced by the jailer or designee." KRS § 441.265(7). The Plaintiffs claim they never received this statement, although the record reflects that both Plaintiffs signed Prisoner Property Receipts which state that:

> I hereby certify that I have received all items listed on this receipt as well as information regarding the funds within my inmate account, and the appropriate procedures for recouping the same.

(Warren Count Regional Jail Prisoner Property Receipt [DN 7-7, 7-13]).

The third claim is similar to the second in that it alleges the violation of a state statute. Plaintiffs argue that the Defendants have violated the Fourteenth Amendment by deducting fees from the Plaintiffs' inmate account not authorized by KRS 441.265, including the collection of a bond fee; the initial charge of a combined processing and per diem fee; and the deduction of an amount that is labeled "Posted to Fines/Cost/Med".

Despite the fact that the County Defendant's response seems to address all of Plaintiff's claims of unauthorized fee assessments, the Court will assume for purposes of this motion that some fees collected were unauthorized and that the Plaintiffs never actually received a copy of their billing statement. Thus, the allegations support a claim that the jail violated the state statute that provides the process for assessing prisoner fees. The question presented here is whether such allegations support a section 1983 constitutional claim.

11

"Although the Fourteenth Amendment requires a State to provide a fundamentally fair process 'at a meaningful time and in a meaningful manner,' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), it is not violated every time a county violates a state law- particularly a state law that does not purport to define a property interest or a pertinent liberty interest, see, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 119 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (Section 1983 'does not provide a remedy for abuses [of state power] that do not violate federal law.')." Sickles, 501 F.3d at 732. The billing statement requirement is part of Kentucky's procedure for releasing prisoners, it is not constitutionally required. And even if the Jail assessed unauthorized fees, and arguably violated Plaintiff's Due Process, the Plaintiffs should have taken advantage of their post-deprivation remedies provided by the Jail. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517 (1984) (citing Parratt v. Taylor, 451 U.S. 527 (1981)); See also Bailey v. Carter, 15 Fed. Appx. 245, 251 (6th Cir. 2001) ("Even if the copayment charge does deprive the inmates of property within the meaning of the Due Process Claim, the inmates failed to allege that the post-deprivation procedure is inadequate."); McMillan v. Fielding, 136 Fed. Appx. 818 (6th Cir. 2005) (The Sixth Circuit affirmed a decision dismissing a prisoner's 42 U.S.C. § 1983 allegations for failure to state a claim. The prisoner alleged that an officer took a check from the prisoner's legal mail and put it into the prisoner's trust fund account against his wishes. The district court held "that 42 U.S.C. § 1983 is not a remedy for addressing the taking of property if a post-deprivation remedy is available.")

In Sickles, the Sixth Circuit found that the plaintiffs had adequate post-deprivation remedies

12

because the inmates were informed about the county removing money from their canteen account and the inmates were provided notice regarding the jail's internal grievance procedures. 501 F.3d at 731. In the present case, upon admittance to the jail, Plaintiffs signed an Inmate Rights & Rules and Services Offered to Inmates form stating that they understood the rules and regulations of the jail and received their own copy of the rules and regulations. [DN 7-8, 7-12.] In those rules and regulations there are sections regarding the amount of fees assessed a prisoner and the proper procedure to file grievances. Under 501 K.A.R. 3:120, the Jail must return property that was not legally confiscated and the prisoners are required to sign a receipt for their property at the time of release. If a prisoner has a complaint, he or she must "submit [it] in writing with specific details within twenty-four (24) hours from the time of release." 501 K.A.R. 3:120(5)(8). It is Warren County's policy that the Jail provides information regarding the funds in their inmate account and allows a 90-day window to collect any excess funds. Plaintiffs were provided adequate post-deprivation and thus, a section 1983 claim is not the proper remedy.

While Plaintiffs argue that their failure to avail themselves of any post deprivation remedy does not bar this action, the law in the Sixth Circuit states that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." Filipelli v. Hopkins County Jail, 2011 WL 5555682, *2 (W.D. Ky. Nov. 15, 2011) (quoting Vicory v. Walton, 721 F.2d 1062 (6th Cir. 1983)). The Plaintiffs have not pursued any post-deprivation remedies and, therefore, can not allege that their post-deprivation remedies were inadequate to remedy the deprivation. In addition, Plaintiffs have alleged several state law tort claims which have been found to be adequate post-deprivation remedies. See Wagner v. Higgins, 754 F.2d 186, 191 (6th Cir. 1985) (the Sixth Circuit

13

affirmed a holding that there was no section 1983 claim as "a common law action for conversion was available . . . in the state courts of Kentucky"); Vicor, 721 F.2d at 1065 ("Policy considerations do not require a federal hearing in procedural due process cases that can be corrected in state court.") Therefore, this Court holds that a 42 U.S.C. § 1983 claim is not the appropriate remedy for Plaintiffs and their allegations concerning their Fourteenth Amendment rights must be dismissed for failure to state a claim upon which relief may be granted.

### 3. SCB as State Actors

As mentioned, to bring a 42 U.S.C. § 1983 claim "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," West v. Atkins, 487 U.S. 42, 48 (1988), and second, he "must show that the alleged deprivation was committed by a person acting under color of state law." Id. The SCB Defendants argue that Plaintiffs' § 1983 claim must also fail because SCB Defendants did not act under the color of state law. The Supreme Court has stated that "acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). As a bank, SCB accepts checks and cash, crediting that money to customers' bank accounts on a daily basis, in its ordinary course of business. SCB Defendants reason that performing these routine acts for a county jail does not clothe them with the authority of state law.

In response, Plaintiffs state the Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982). Plaintiffs state that the case at present is unique because it involves

14

a seizure of disputed property, conversion to state ownership, and the SCB Defendants' "willful participation in an illegal process by which checks written to Plaintiffs were permitted by the SCB Defendants to be deposited in an account for the Jail without Plaintiffs' knowledge, endorsement or consent." (Pls' Response to SCB Defs.' Mot. Summ. J., 2 [DN 10].)

"The Sixth Circuit applies three tests for determining whether private action is fairly attributable to the state: the nexus test, the public function test, and the state compulsion test." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003) (citing Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003)). First, the nexus test "requires that a sufficiently close relationship exist between the state and the private actor (through regulation or by contract) so that private action may be attributable to the state." Id. Plaintiffs can not establish that SCB was a state actor under the nexus test. There were no contracts involved, and "[m]erely because a business is subject to state regulation does not by itself convert its action into state action." Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992). The Jail was just another customer to SCB. SCB was not working under the Jail's direction, only holding checks and cash in an account for the Jail.

Next, Plaintiffs can not establish that SCB Defendants were state actors through the public function test which "requires that the private actor exercise powers that are traditionally reserved to the state." Wittstock, 330 F.3d at 902. These powers include holding elections and eminent domain. See Wolotsky, 960 F.2d 1335. Providing banking services is not a power that has been traditionally reserved to the state.

Lastly, the Plaintiffs can not establish that SCB Defendants were state actors through the state compulsion test. "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the

15

private actor is deemed to be that of the state." Id. The choice of the SCB Defendants to accept cash and checks from the Jail was the SCB Defendant's choice. No allegation has been made that Warren County exercised power over the bank in order to force them to hold prisoner funds in an account, the Jail was simply a customer of the bank. Therefore, the Court holds that SCB Defendants were not acting under the color of state law for purposes of a § 1983 claim.

### B. Amended Complaint

The Plaintiffs have filed a motion for leave to file an Amended Class Action Complaint in order to (1) add a plaintiff and class representative; (2) specify that SCB acted under color of state law; and (3) add a claim under the Fair Debt Collection Practices Act. [DN 21]. This motion for leave to file an Amended Complaint is governed by Fed. R. Civ. P. 15(a)(2) which states that, "a party may amend its pleading only with the opposing party's written consent or the court's leave." A district court should freely grant a plaintiff leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

The County Defendants object to the Amended Complaint on grounds that Plaintiffs had the opportunity to add any new plaintiffs and assert all claims and allegations in their original Complaint and failed to do so. SCB Defendants also object to the Amended Complaint stating that the original Complaint already alleged that SCB Defendants were state actors and the parties have already briefed the topic, making it an unnecessary amendment to the original Complaint. As to the Fair

16

Debt Collection Practices Act ("FDCPA") claim, the SCB Defendants argue that this claim is futile because the statutes apply only to "debt collectors" which are defined as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another...

15 U.S.C. § 1692a(6). In addition, the SCB Defendants contend that the cash and checks that were confiscated from the prisoners are considered contraband inside the Jail and the bank was safeguarding the monies, which the Jail collected incarceration-related fees from. These fees, the SCB Defendants argue, do not fit the FDCPA definition of "debt" which is

> Any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). SCB Defendants reason that the incarceration-related fees are not the subject of transactions that are "primarily for personal, family or household purposes." Id.

While the Sixth Circuit has stated that "the Fair Debt Collection Practices Act is an extraordinarily broad statute," it is inapplicable to the case at present. Bridge v. Ocwen Federal Bank, FSB, 2012 WL 1470146, at *4 (6th Cir. April 30, 2012) (citation omitted). SCB was not acting as a debt collector for the Jail. Monies and checks were deposited into the canteen account for safekeeping and Jail had access to those funds to collect fees. Regardless of whether or not the checks were properly or improperly endorsed, SCB was not acting as a third party debt collector for Jail and it can not be said that the SCB Defendants' principal purpose is collecting debts. Banks have been found to be debt collectors, but these cases involve debts that the banks purchased from

17

credit card companies or mortgages that were assigned to a third-party bank. See Bridge, 2012 WL 1470146; Gamby v. Equifax Information Services LLC, 2012 WL 447491 (6th Cir. Feb. 14, 2012). The Court agrees with the SCB Defendants' argument that allowing the Amended Complaint would be futile. As stated above, the Court determined that there was no deprivation of Plaintiffs' constitutional rights, and SCB Defendants did not act under color of state law. The Fair Debt Collection Practices Act is inapplicable to this situation and, as a matter of law, the amendment is futile. Lastly, the facts regarding the additional plaintiff do not alter the Court's finding as to the deprivation of constitutional rights. Therefore, the Court denies Plaintiffs' motion for leave to file an Amended Class Action Complaint.

**C. State Law Claims**

In their Complaint, Plaintiffs have also alleged in Count II that the County and SCB Defendants were negligent and grossly negligent; in Count III, that the County and SCB Defendants engaged in a conspiracy to wrongfully deprive Plaintiffs of their property; in County IV, a violation of Section 10 of the Kentucky Constitution, Articles 355.3 and 355.4 of the Kentucky Uniform Commercial Code, sections 506.040 *et seq.*, 514.030, 514.070, 522.020 and 522.030 of the Kentucky Penal Code, as well as section 501 KAR § 3:120 of the Administrative Regulations of the Commonwealth of Kentucky; in Count V, the County and SCB Defendants acted in bad faith; in Count VI, the County and SCB Defendants converted the property of the Plaintiffs; and in Count VI, the County and SCB Defendants fraudulently deprived the Plaintiffs of their property. SCB Defendants contend that because the sole federal claim under Section 1983 fails as a matter of law, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, as follows:

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 USC § 1367(c)(3). In Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988), the Supreme Court discussed the propriety of exercising supplemental jurisdiction over pendent state-law claims following its decision in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

> The Gibbs Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, Gibbs emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Ibid. Under Gibbs, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. Id., at 726-27.

Carnegie-Mellon, 484 U.S. at 349-50.

Given that the remaining claims are state-law claims, and that this case is in its infancy, the Court finds that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Accordingly, Plaintiffs' pendent state-law claims are **DISMISSED** without prejudice.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that SCB Defendants' motion to dismiss [DN 6] and County Defendants' motion for summary judgment [DN 7] are **GRANTED** as to the 42 U.S.C. § 1983 claim. The State law claims are **DISMISSED** without prejudice.

Plaintiffs' motion for leave to file surreply [DN 18] is **GRANTED** and was taken into consideration in the Court's decision. Plaintiffs' motion for leave to file an amended class action complaint [DN 21] is **DENIED**. Plaintiffs' motion for leave to file supplemental response to motions to dismiss and for summary judgment [DN 22] is **DENIED AS MOOT.**

Joseph H. McKinley, Jr., Chief Judge
United States District Court

May 29, 2012

cc: counsel of record